UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

JUN 29 2012


CLERK

| | |
|---|---|
| LOREN REYNA, a/k/a LOREN TWO BULLS,[1]<br><br>          Plaintiff,<br><br>     vs.<br><br>DOUGLAS WEBER, Chief Warden Director of Prison Operations Warden; TIM REISCH, Cabinet Secretary, Secretary of Corrections, Department of Corrections; BOB DOOLEY, Warden of Mike Durfee State Prison; DEPARTMENT OF HUMAN SERVICES CORRECTIONAL MENTAL HEALTH CARE; DEPARTMENT OF HEALTH CORRECTIONAL HEALTH CARE; LEWIS & CLARK BEHAVIORAL HEALTH SERVICES; DENNY KAEMINGK,<br><br>          Defendants. | Civ.  11-4044<br><br>ORDER<br>(Motion for Mental Exam, Doc. 72;<br>(Motion for Evidentiary Hearing, Doc. 80; Motions to Compel and Gather, Docs. 100 and 101; Motion for Order to Show Cause, Doc. 112; Motion to Deny Order to Seal, Doc. 114)<br><br>And<br><br>REPORT and RECOMMENDATION (Motion for Summary Judgment, Doc.75) |

---

     [1]For ease of reference, the Plaintiff will be referred to as "Two Bulls" throughout this Opinion

## BACKGROUND

Plaintiff, Loren Reyna, a/k/a Loren Two Bulls, is an inmate in the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. He has filed a *pro se* lawsuit pursuant to 42 U.S.C. § 1983, alleging various violations of his civil rights. His claims have been "screened," Reyna was granted *in forma pauperis* status, and the suit has been served upon Defendants Weber, Department of Health Correctional Healthcare, Dooley, Department of Human Services Correctional Mental Health Care, and Lewis & Clark Behavioral Health Services. Pretrial matters have been referred to the undersigned pursuant to 28 U.S.C. § 636(b). *See* Doc. 45. Pending are: Defendants' Motion for Summary Judgment (Doc. 75) and Reyna's Motion for Mental Exam (Doc. 72) Motion for Evidentiary Hearing (Doc. 80), Motion to Compel (Doc. 100 and Motion to Gather (Doc. 101); Motion for Order to Show Cause (Doc. 112); and Motion to Deny Order to Seal (Doc. 114).

## JURISDICTION

Two Bulls is a *pro se* litigant incarcerated at the South Dakota State Penitentiary. He brings his claims pursuant to 42 U.S.C. § 1983, challenging the conditions of his confinement. The pending motions were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## DISCUSSION

Two Bulls's original Complaint is somewhat difficult to follow and consists in large part of Two Bulls's regurgitation of the details of the internal administrative remedy process and of the denials of his claims within the prison system before he filed suit. Liberally construed, however, Two Bulls alleges the Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment prohibition against cruel and unusual punishment. Two Bulls asserts that in May, 2009 he was (falsely) accused of leaving the Health

Services building with one of his medications (Wellbutrin)[2] still in his possession.   As a result, his Wellbutrin prescription was discontinued.  Although other medications were substituted until June, 2010, Two Bulls alleges in his Complaint that he has been denied all psychiatric medication since June 3, 2010.[3]

Two Bulls also alleges he has been denied necessary medications for allergies, asthma and vision care.  Among Two Bulls's claims is that Defendant Tjeersdma told Two Bulls to quit complaining and called him a "hypocondreact" (sic), a faker and an "insane mental case [who] is crazy."

Two Bulls claims he sustained a rapid weight loss between August 1 and August 13, 2010. It is unclear whether Two Bulls attributes his claimed weight loss to the alleged denial of his serious medical needs.  Two Bulls alleges, however, that SDSP Health Services personnel "has not allowed him to step on the scale" and the cause of his weight loss remains unknown because the Health Services staff at both the SDSP and Mike Durfee refuse to investigate.

### 1.    Two Bulls's Motion for Mental Evaluation (Doc. 72).

Two Bulls has moved (for the second time) for the Court to appoint an independent physician to evaluate him. (Doc. 72). Two Bulls cites Fed. Rule Civ. P. 35(a) and requests that specific examinations and tests be performed (clinical interview, Wechsler Abbreviated Scale of Intelligence, Rorschach Pyschodiagnostic Inkblot Technique, Thematic Apperception Test, and Human Figure Drawings) so that "once the examinations are complete, he can file the said scoring and results to this civil suit and be used as exhibits to support the foregoing arguments, facts and claims that have been developed in the record before this court." Doc. 72, p. 2.   In other words, Two Bulls requests the Court to appoint an expert to examine him to support his claim that the

---

[2]Wellbutrin is an antidepressant indicated for the treatment of major depressive disorder. The generic name for Wellbutrin is Bupropion.  www.rxlist.com

[3]In a document (Doc. 106) filed on June 20, 2012, Two Bulls notified the Court his Wellbutrin prescription had been restored.

Defendants have been deliberately indifferent to his serious medical needs. This, however is not the purpose for Rule 35(a). Fed. R. Civ. P. 35(a) provides in part:

> ### Rule 35.  Physical and Mental Examinations
> ### (a) Order for an Examination.
> (1) *In General.*  The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or control.

"Rule 35(a) does not give the district court authority to order an independent mental examination *at government expense. This* . . . is similar to an indigent plaintiff requesting the court to foot the bill for an expert witness. . . Congress has not made provision for payment of expert witness fees for indigent plaintiffs in civil actions . . . we find no error in the district court's finding that it has no authority to grant Plaintiff's request for a free independent psychiatric examination." *Kruitbosch v. Van De Veire*, 978 F.2d 1267 (10th Cir. 1992) (unpublished) (emphasis added). *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997) (denial of indigent prisoner's request for Rule 35(a) exam affirmed, where his motion revealed its purpose "was to obtain medical care and complain of deliberate indifference to his serious medical needs . . ."). *See also Savajian v. Milyard*, 2009 WL 5126581 (D. Colo.) (denying *pro se* indigent inmate's request for independent medical exam pursuant to Fed. R. Civ. P. 35(a) because "although the plaintiff states he is seeking an independent medical exam pursuant to Fed. R. Civ. P. 35(a), he is actually seeking a cost-free medical examination which he hopes will support his claims . . . Rule 35 was not designed for this purpose.").

Likewise, 28 U.S.C. § 1915 entitles indigent prisoners to bring their legal claims to court without pre-payment of the usual fees. There is, however, no similar provision which allows the Court to appoint expert witnesses for the express purpose of supporting a *pro se* litigant's claims.  "The plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant." *Hannah v. United States.* 523 F.3d 597, 601 (5th Cir. 2008). *See also Orr v. Valdez*, 2011 WL 5239223 (D. Idaho) (same). In *Orr* the Court noted that § 1915

4

does not authorize the Court to appoint experts for indigent prisoners.    A federal court may appoint an expert witness under Fed. R. Evid. 706(a), and allocate the expert's fees among the parties.  "However, courts have recognized that, reasonably construed, Rule 706 does not contemplate the appointment of, and compensation for, an expert to aid one of the parties.  In other words, the principal purpose of a court-appointed expert is to assist the trier of fact from a position of neutrality, not to serve as an advocate." *Id.* at *2. *See also Victor v. Lawler*, 2011 WL 722387 (M.D. Pa.) (reiterating that the in forma pauperis statute, 28 U.S.C. § 1915, contains no provision authorizing the Court to order the appointment of medical experts for indigent litigants at no cost, gathering cases).    For these reasons, Two Bulls's Motion for Mental Examination (Doc. 72) is **DENIED**.

### 2.    Two Bulls's Motion to Compel (Doc. 100) and Motion to Gather (Doc. 101)

Next, Two Bulls moves the Court to Compel "the Respondents" Pete Fuller, Janine Kern, and Jeff Davis "to provide and present the transcript of Plaintiff's writ of habeas corpus ad prosequendum, and the sentencing transcripts." *See* Doc. 100.[4]  Two Bulls also moves "to gather and force" Pete Fuller, Janine Kern, and Jeff Davis to "testify pursuant to § LR 39.1." (Doc. 101). These Motions will be denied for several reasons.  First, the "Respondents" to whom the Motions are directed are not parties to this proceeding.  Second, the "Respondents" to whom the Motions are directed are all current or former state court Judges who, subject to a few narrowly drawn exceptions not relevant here,  are absolutely immune from suit–whether the relief sought is money damages or declaratory relief. *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); 42 U.S.C. § 1983.[5]  Few doctrines are more solidly established at common law than  the absolute

---

[4]Two Bulls refers to the hearing which was held before Judge A. P. "Pete" Fuller on August 17, 2010.  Two Bulls suggests that, based on statements made by Judge Fuller during the August 17 hearing, the Defendants violated a court order by discontinuing his prescription for Wellbutrin/Bupropion.

[5]*Mireles* acknowledged two circumstances in which judicial immunity does not apply: (1) actions taken by the judge that are not in his judicial capacity; and (2) actions taken that although are judicial in nature, are taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 12, 112 S.Ct. at 288.  Two Bulls does not allege, and the Court expressly finds that neither exception applies

immunity of judges for their judicial acts.   *Pierson v. Ray*, 386 U.S. 547, 554-55, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 1213 (1967).   This well-settled doctrine is not diminished  by 42 U.S.C. § 1983,[6]  *Id.* 386 U.S. at 554, 87 S.Ct. at 1218, *Bolin v. Story*, 225 F.3d 1234, 1240 (11th Cir. 2000). Third, Two Bulls filed his "Motion to Compel" and "Motion to Gather," both seeking discovery materials, on June 6, 2012, nearly six months after discovery  deadline had passed and three months after the motion deadline had passed.  *See* Doc. 50 (Scheduling Order).  Two Bulls did not request a continuance of either deadline.  Finally, assuming Judge Fuller made the statements attributed to him by Two Bulls during the August 17, 2010 hearing, obtaining a transcript of the hearing will not assist Two Bulls.  Whatever Judge Fuller said during the August 17, 2010 hearing was never reduced to an Order or Judgment, and Judge Davis, who assumed responsibility for Two Bulls's case,  later denied Two Bulls's motion for a sentence modification.   Informal oral statements made from the bench which conflict with a court's formal findings and conclusions are to be disregarded.  *O'Neill v. AGWI Lines*, 74 F.3d 93, 95 (5th Cir. 1996).  For all of these reasons, both Two Bulls's Motion to Compel (Doc. 100) and Motion to Gather (Doc. 101) are **DENIED**.

### 3.   Two Bulls's Motion for Evidentiary Hearing (Doc. 80)

Two Bulls has requested an evidentiary hearing "to cross examine the . . . defendants with material facts, evidence, things and documents, along with oral argument . . . " Doc. 80, p. 1.  In the alternative, Two Bulls requests a trial date, or that his case be dismissed so that he may pursue

---

in this case.

[6] 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

(Emphasis added).

his appeals. Because, for the reasons explained later in this Report and Recommendation, this Court finds there remain no genuine issues of material fact for trial, and it will be recommended to the District Court the Defendant's Motion for Summary Judgment be granted, Two Bulls's Motion for Evidentiary Hearing (Doc. 80) is **DENIED.**

### 4.    Two Bulls's Motion For Order to Show Cause (Doc. 112)

Two Bulls moved for an Order to Show Cause because he believed the Defendants failed to comply with the Court's June 11, 2012 Order to provide a file a copy of Two Bulls's institutional mental and medical records. The Defendants did comply with the Court's Order, and filed the records as requested. The Motion for an Order to Show Cause is **DENIED.**

### 5.    Two Bulls's Motion to Deny Motion to Seal (Doc. 114)

Two Bulls objects to the Defendants' request to seal Two Bulls's medical records which have been filed with the Court. Two Bulls has waived his right to the physician/patient privilege with respect to the records by placing his physical and mental condition in issue, pursuant to the E-Government Act of 2002. The Court is sensitive, however, to the fact that this case file is electronically available to the general public. Although relevant to the matters to be decided in this case, Two Bulls's medical records also contain sensitive and private information about him which is not relevant to any issue in this case. Two Bulls's medical records will not be made available for generic review by the public. The medical records will remain sealed, and Two Bulls's Motion to unseal them (Doc. 114) is **DENIED.**

### 6.    Defendants' Motion for Summary Judgment (Doc. 75)

The Defendants have moved for summary judgment. In support of their Motion, they have submitted: A supporting brief (Doc. 76); the Supplementary Affidavit of Jennie Englund with attachments (Docs. 75-1, 75-2, 75-3); the Affidavit of Brandi Csordascsics (Doc. 75-4); the Affidavit of Douglas Weber (Doc. 75-5); the Affidavit of Robert Dooley (Doc. 75-6); and the Affidavit of Mark Steil (Doc. 85). They have also submitted a Statement of Undisputed Material Facts (Doc. 77) and a Response to Plaintiff's Objection to Motion for Summary Judgment (Doc.

84).  Also, upon Order of the Court, the Defendants have provided a complete set of Two Bulls's institutional medical and psychiatric records, (Doc. 111), which have been filed under seal.

In response to the Defendants' Motion for Summary Judgment, Two Bulls has submitted : a Resistance to Defendants' Motion for Summary Judgment (Doc. 81); a Brief in Resistance to Defendants' Motion for Summary Judgment (Doc. 82); the Affidavit of Loren C. Two Bulls a/k/a Two Bulls (Doc. 94); Plaintiff's Objections to Defendants' Response (Doc. 96); Amended Objection to Defendants' Response (Doc. 97) Response to Defendant's Clarification (Doc. 98); Notice to Both Courts of Plaintiff's Being Placed Back on Wellbutrin (Bupropion) (Doc. 106); Supplement Plaintiff's Evidence of Undisputed Material Facts (Doc. 107); and  Supplement #2 Containing Further Evidence of Undisputed Material Facts (Doc. 108).  All of these documents, along with the Complaint, Two Bulls's medical records, and the entire record herein  and have been carefully considered.

### A.    Summary Judgment Standards

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellog Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); Fed. R. Civ. P. 56(c).  To avoid summary judgment, the non-moving party must "show that admissible evidence will be available at trial to establish a genuine issue of material fact." *Churchill Business Credit, Inc. v. Pacific Mutual Door Co.*, 49 F.3d 1334, 1337 (8th Cir. 1995). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotation marks and citations omitted).  "Summary judgment is an extreme remedy, to be granted only when no genuine issue exists as to any material fact." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997).

While prisoners are entitled to the benefit of liberal construction of their pleadings because of their *pro se* status, Fed. R. Civ. P. 56 remains applicable to them. *Quam v. Minnehaha County Jail*, 821 F.2d 522 (8th Cir. 1987). Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner *pro se* claims without regard for these special problems. *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). The Eighth Circuit has long held that the Court has no obligation to instruct a *pro se* prisoner how to respond to a motion for summary judgment. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001). It is this Court's regular practice, however, to provide with the Scheduling Order which is mailed to *pro se* prison litigants copies of the Local Rules and the Federal Rules of Civil Procedure which are applicable to summary judgment proceedings. *See* Doc. 50 and attachments. "Like any other civil litigant, [a *pro se* prisoner is] required to respond to defendants' motions with specific factual support for his claims to avoid summary judgment . . . An adverse party may not rest upon the mere allegation or denials of his pleading, but must by affidavits or otherwise . . . set forth specific facts showing there is a genuine issue for trial." *Beck*, 253 F.3d at 333 (citations omitted, punctuation altered). It is with these standards in mind that the Court has considered Defendants' Motion for Summary Judgment, and whether the materials Two Bulls has submitted in resistance to the Defendants' Motion are sufficient to establish a genuine issue of material fact for trial.

### 1.    Undisputed Facts

Pursuant to Local Rule 56.1.A, the Defendants submitted a Statement of Undisputed Material Facts (Doc. 77). Two Bulls submitted several documents in resistance to the Motion for Summary Judgment, but did not submit a response to Defendants Statement of Undisputed Material Facts as required by Local Rule 56.1.B. Two Bulls has been provided with a copy of both the Local Rules and the Federal Rules of Civil Procedure which pertain to summary judgment. In an effort to balance the Eighth Circuit's admonitions that (1) *pro se* prisoners must comply with the rules of civil procedure and are required to respond to defendants' motions with specific factual support for their claims to avoid summary judgment (*Quam, Beck*); and (2) that pro se prisoners should benefit from a certain amount of leniency in consideration for the special

9

problems they face in vindicating their constitutional rights on a *pro se* basis (*Nickens*), Two Bulls's papers have been carefully reviewed to discern whether any genuine issue of material fact remains for trial.

The record establishes the following facts which Two Bulls does not dispute, or has not sufficiently supported with specific factual record evidence to create a genuine issue for trial:

### a.    The Named Defendants

The Defendants in this lawsuit are Douglas Weber, Director of Prison Operations and Warden of the South Dakota State Penitentiary; Tim Reisch/Denny Kaemingk, former/current secretary of Corrections;[7] Robert Dooley, Warden of the Mike Durfee State Prison in Springfield, South Dakota,; The Department of Social Services, Correctional Mental Health Services; Department of Health, Correctional Health Program; and Lewis and Clark Behavioral Health Services (a private corporation that has a contract with the South Dakota Department of Corrections to provide mental health services at Mike Durfee State Prison).[8]

### b.    Two Bulls's Mental Heath Care

Two Bulls alleges the Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment prohibition against cruel and unusual punishment. Two Bulls has, at all times material to this lawsuit, been incarcerated in the South Dakota

---

[7]The summons for Tim Reisch was returned unserved. In her Order dated May 19, 2011, Judge Schreier explained that Denny Kaemingk was sworn in as the Secretary of Corrections on May 4, 2011 and should be substituted for Tim Reisch as a Defendant. The record reflects, however, that a summons was never served upon either Reisch nor Kaemingk.

[8] Two Bulls served suit papers upon Cory Nelson , Missy Johnson, Mark Steil, Tiffany Wolfgang, and Julie Spurrell. It us unclear whether Two Bulls intended service upon these individuals to be in their individual capacities or as service upon their respective entities. The individuals, however, were not named in Two Bulls's original Complaint and Two Bulls has never received the Court's permission to add them as individual Defendants pursuant to Fed. R. Civ. P. 15.

Department of Corrections facilities, either in the South Dakota State Penitentiary in Sioux Falls, or the Mike Durfee State Prison in Springfield, South Dakota.

All inmates who enter the South Dakota DOC system receive a mental health screening and assessment when they are admitted to prison. Englund Aff. Doc. 55. Offenders who are on psychotropic medications upon intake to prison are seen by a psychiatric provider and scheduled for follow-up appointments as needed. Offenders may contact the Master Level therapist assigned to their unit if they feel they need mental health or psychiatric services. *Id.* Two Bulls received his intake evaluation on October 20, 2008. Two Bulls has been seen for psychiatric evaluation and follow up throughout his incarceration.

Mark Steil, who is a physician's assistant employed by the Lewis & Clark Behavioral Health Services saw Two Bulls for the first time on December 18, 2008. Steil works under the supervision of two psychiatrists, Dr. Dan Hicks and Dr. Alan Brevick.[9] Steil noted Two Bulls was then taking Trazodone[10] and Risperdal.[11] Steil decided to start Two Bulls on Celexa[12] and decrease the Trazodone and reassess in six weeks. On February 5, 2009, Two Bulls asked Steil to discontinue the Trazodone completely. He believed it was making him too sleepy. Two Bulls requested that he be put back on Wellbutrin,[13] which he had been taking before he entered prison. Steil noted Two Bulls's history of mood disorder, depressive disorder, and anxiety disorder. Steil

---

[9]Steil provided this information in his Affidavit. The record does not indicate Two Bulls has ever been examined or interviewed by either of these psychiatrists.

[10]Trazodone is an anti-depressant which is indicated for the treatment of major depressive disorder. www.rxlist.com

[11]Risperdal is a psychotropic drug indicated for the treatment of schizophrenia. www.rxlist.com

[12]Celexa is a selective serotonin reuptake inhibitor indicated for the treatment of depression. www.rxlist.com

[13]Bupropion is the generic name for Wellbutrin. Wellbutrin is an antidepressant indicated for the treatment of major depressive disorder. www.rxlist.com

agreed to discontinue Trazodone, increase Two Bulls's dosage of Celexa, and continue Risperdal.

When Two Bulls was next seen in early March, 2009, he reported little change in his mood. By mid-March, 2009, Two Bulls reported that although he was tolerating his medications, he still felt depressed. He reported that none of the medications he'd tried really worked except Wellbutrin (Bupropion). Steil agreed to start Two Bulls on a trial of Bupropion, although Steil ordered this medication as a "crush" order. Two Bulls continued on the Celexa and Risperdal. Steil planned to reassess in four to eight weeks. Steil saw Two Bulls again on May 14, 2009. Two Bulls reported he was doing well but still felt slightly depressed and irritable. Steil decided to increase the Bupropion from 200 mg at supper to 100 mg at breakfast and 150 mg each at lunch and supper. Steil entered an order to continue the prescription for twelve months. Steil also counseled Two Bulls that if his mood improved with this adjustment, it may be possible in the future to discontinue the Risperdal. Steil planned to re-assess in six or eight weeks.

Jennie Englund is the Clinical Supervisor of the Correctional Behavioral Health Services at the South Dakota State Penitentiary. As a part of her Supplementary Affidavit (Doc. 75-1), she provided records pertaining to Two Bulls's mental health care and treatment during his incarceration. One of the records is entitled "Drug Abuse Report" dated May 24, 2009. The report appears to have been written by two members of the medical staff who were working at the Mike Durfee State Prison "med pass" window on May 24. Two Bulls was, at the time, taking three separate medications (Celexa, Risperdal, and Wellbutrin (Bupropion.)) According to the report, Two Bulls attempted to leave the med pass area with the Bupropion, concealed in a small cup, cupped in his hand. The report indicates Two Bulls pretended to throw the cup away as he walked out of med pass. He refused several orders to stop and return to the area, but finally did return and threw the cup into the trash. In his Affidavit (Doc. 94) Two Bulls denies he attempted to leave the med pass area on May 24 with the medication (Bupropion) still in his hand. He insists that "the allegation of [him] abusing psychotropic medications are false."

There is a "kite report" contained in the medical records which indicates that on May 26, 2009, Two Bulls was seen in the Mental Health unit per his kite request. He asked to have his Bupropion prescription increased, but Cory Nelson informed Two Bulls that the Mental Health department received a report of Two Bulls's suspected abuse of the drug which was under review. Nelson informed Two Bulls that if the Bupropion was discontinued, Two Bulls would be seen the following week to explore alternative medications.

On June 4, 2009, Steil noted Two Bulls's frustration at having been taken off Bupropion. Two Bulls was also upset that the medications he was still taking were being crushed. Two Bulls expressed interest in trying Buspar.[14] Steil noted Two Bulls was irritable, but not psychotic. Steil noted that Two Bulls had received a disciplinary write up on May 24, 2009 for non-compliance with his crushed Bupropion. Based on that information, Steil informed Two Bulls he would never be able to receive Bupropion again while incarcerated.[15] Steil continued Two Bulls on Celexa but lowered the dosage, and started Two Bulls on Buspar. At Two Bulls's request, Steil discontinued Two Bulls's Risperdal prescription.

Mr. Two Bulls's medication compliance was reviewed on August 13, 2009. At that time, Cory Nelson responded to Two Bulls's "kite" and notified Two Bulls his medications were being discontinued because Two Bulls had been inconsistent with his medication and non-communicative with the mental health department. On August 25, 2009 Tom Gilchrist visited Two Bulls on Two Bulls's housing unit, and instructed Two Bulls to begin using a journal to track his thoughts and feelings. Two Bulls agreed.   On September 25, 2009, Gilchrist saw Two Bulls

---

[14]Buspar is an anti-anxiety agent that is indicated for the management of anxiety disorders or the short-term relief of symptoms of anxiety.  www.rxlist.com

[15]Mr. Steil submitted an Affidavit (Doc. 85) which explains that in the prison setting, Bupropion is a highly abused medication.  It is not a scheduled drug but can be abused by saving it and then snorting or injecting it.  *Id.*  Although the South Dakota DOC still allows the use of Bupropion, many states have banned or denied its distribution within their prison systems.  Two Bulls's informational write up dated May 24, 2009 was done on the basis of suspicion he was abusing the drug or saving it for non-prescribed use or dispensing it to others. *Id.*

13

again.  Two Bulls reported he was struggling and wished to go back on medication.  Gilchrist told Two Bulls it would be possible, but reminded Two Bulls that the reason his medications were discontinued was his own non-compliance and failure to take them as prescribed.  Two Bulls assured Gilchrist he would take his medications as prescribed and cooperate with the mental health department.  Gilchrist agreed to refer Two Bulls back to the psychiatry department.

Two Bulls saw Mark Steil again on October 22, 2009.  By that time, Two Bulls had been off all his medications for a few months.  He reported that he attributed his irritability to ADHD.  Steil was previously unaware that Two Bulls had ADHD.  Nevertheless, Steil agreed to prescribe Strattera[16] on a trial basis.  Steil also re-started Remeron[17]

In December, 2009, Two Bulls reported that the Strattera was not doing him any good.  He indicated that in retrospect, he thought he'd done well on Buspar.  Steil agreed to slowly decrease Two Bulls's Strattera with the goal of discontinuing it altogether,  to restart Buspar, and to continue the Remeron.  Steil planned to reassess in six weeks.  There is a form in the file dated January 10, 2010, signed by Two Bulls, which indicates that as of that date Two Bulls refused to accept his Remeron prescription.  On February 4, 2010, Steil saw Two Bulls and decided to request a trial of Seroquel for mood stabilization and to adjust Two Bulls's  sleep cycle.  In March, 2010, Two Bulls reported he'd been taking his medications as directed, although he indicated continued to have trouble sleeping.  Steil agreed to increase Two Bulls's Seroquel[18] and Buspar.  Steil also urged Two Bulls to be more compliant and consistent in taking his medications.  During this visit, Two Bulls informed Steil that he expected to be released on parole very soon.

---

[16]Strattera is a selective norepinephrine reuptake inhibitor.  It is indicated for the treatment of attention deficit/hyperactivity disorder.  www.rxlist.com

[17]Remeron is an antidepressant indicated for the treatment of major depressive disorder. www.rxlist.com

[18]Seroquel is a psychotropic drug indicated for the treatment of schizophrenia and bi-polar disorder. www.rxlist.com

14

On April 29, 2010, Two Bulls told Steil he believed he'd been on his current medications too long because he did not think he was receiving a benefit from them anymore. He reported that he felt like he lacked motivation and energy. Steil recommended they try to simplify the medications to see whether Two Bulls was simply over-sedated or feeling side effects from the Seroquel. Steil also recommended a reduced dosage of Seroquel and continuation of the Buspar.

Two Bulls's final visit with Mark Steil occurred on June 3, 2010. On that date, Two Bulls reported he'd stopped taking all medication because he thought it was interfering with his alertness. During the visit, Two Bulls "made it quite clear" that he had no interest in starting on any medication other than Bupropion. Steil offered to lower Two Bulls's dose of Strattera but Two Bulls declined. Steil also offered Oxarbazerpine,[19] or Clonidine,[20] but Two Bulls refused both of those medications. Steil advised Two Bulls to closely monitor his condition and to maintain a reasonable balance of rest, exercise and diet. He also advised Two Bulls to "kite" the mental health department to request individual counseling sessions. Steil indicated that because Two Bulls would not be on any specific medications, no follow up appointments would be scheduled. Steil told Two Bulls if wished to re-start medications he would be put back on the schedule. Although Two Bulls is resolute in his claim that he never abused Bupropion or tried to leave the med pass area with the drug still in his possession, he does not dispute that he has refused or been non-compliant with the other psychotropic medications which were offered to him after his Bupropion was discontinued.

Two Bulls saw Cory Nelson in the Mental Health department on June 9, 2010. Two Bulls inquired about receiving copies of his records for purposes of forwarding to the judge. Nelson

---

[19]Oxcarbazepine is used to control seizures, but sometimes prescribed to treat mood disorders.www.rxlist.com; . http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682243.html

[20]Clonidine is commonly used to treat high blood pressure but is sometimes prescribed to treat ADHD. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682243.html

stressed that although Two Bulls had not been allowed Bupropion, Two Bulls had refused many alternative medications which had been offered to him.

Tom Gilchrist from the Mental Health Department saw Two Bulls at the request of Two Bulls's Unit Manager on June 29, 2010. Two Bulls claimed he was doing "fine" with his mental health issues since he'd discontinued his medications. Two Bulls complained to Gilchrist about what he perceived as mistreatment by prison staff, including being called a hypochondriac and crazy. Regarding mental health issues, Gilchrist noted Two Bulls did not request to re-start his medications. Two Bulls believed his unit staff was concerned about his mental health because since discontinuing his medications, he was not as sluggish as before, and had become more vocal about his concerns, therefore staff perceived him as more "high maintenance" and "annoying."

After Two Bulls's medications were discontinued, he had a hearing or hearings in the state court system. It appears the purpose of the hearings were to determine Two Bulls's state habeas corpus claim and/or to determine Two Bulls's request to modify his sentence.[21] Judge A.P. "Pete" Fuller presided over at least one of the hearings. Two Bulls claims Judge Fuller was sympathetic to Two Bulls and indicated he would assist him in restoring the Bupropion prescription. Judge Fuller left the bench, however, before Two Bulls's case concluded. After Judge Fuller left the bench, Judge Jeff Davis decided the merits of Two Bulls's case and denied Two Bulls's request.[22]

It appears that Two Bulls was transferred from Mike Durfee State Prison (MDSP) in Springfield, South Dakota to the South Dakota State Penitentiary (SDSP) in Sioux Falls shortly after his state court hearing(s) in August 2010. In mid- September, 2010, Two Bulls began

---

[21]In his Affidavit (Doc. 94) Two Bulls explains that during the hearing which occurred on August 17, 2010, Judge Fuller told him the Bupropion prescription would be restored. This statement, however was never reduced to an Order or Judgment. Judge Davis subsequently assumed responsibility for Two Bulls's case and denied Two Bulls's Motion for Sentence Modification. *See* Davis correspondence dated January 31, 2011, Doc. 60, attachment 5, page 4 of 4.

[22]*See* Doc. 60, attachment 5, page 4. of 4.

working with Greg Brostad, a mental health therapist from the Mental Health department at the SDSP. In late September, 2010 while in the SHU,[23] Two Bulls again agreed to maintain a journal to track his thoughts and feelings in an attempt to avoid engaging in power struggles and "acting out" with prison staff which had resulted in his placement in the SHU. On November 8, 2010, Two Bulls told Brostad he did not want to be on medication because he did not believe the prison provided him with the appropriate medication.

In early December, 2010, Two Bulls told Brostad he wished to meet with the staff psychiatrist (Dr. Davidson). Based upon his interactions with Two Bulls since his transfer to SDSP, Brostad believed a referral to the psychiatrist would be beneficial. Two Bulls completed a "Psychiatric Questionnaire" for the purposes of the referral. Dr. Clay Pavlis, Psychiatrist, met with Two Bulls on January 17, 2011. Dr. Pavlis reviewed Two Bulls's records, including those from the Human Services Center in Yankton. Dr. Pavlis described Two Bulls as "oscilla[ting] between pleasant to superficial to outright dishonesty to anger, all as a way to manipulate the situation." Dr. Pavlis diagnosed Two Bulls with ADHD, primarily hyperactive,/impulsive type, mood disorder, NOS, polysubstance dependence, in controlled environment, antisocial personality disorder (primary diagnosis) and asthma.   Dr. Pavlis stated:

> I see no need for medication at this point. He has complained of multiple side effects and has misused medication. He also has not had any perceived benefit from any medication. He asks for a trial of Adderall[24] and/or Xanax[25], two medications that are not used in our facility, nor do I feel they would be helpful, especially given the fact that he has been so manipulative and abusive towards medications. I would recommend DBT intervention, as well as one on one work. He certainly will need a behavioral modification plan, as he escalates his behavior. I find that his rehab potential is extremely poor and do not see where increasing psychiatric care will help him in any shape or form. He is told to redirect his energy towards improving his coping skills and relating on an interpersonal basis,

---

[23]Segregated Housing Unit

[24]Adderall is an amphetamine, dextroamphetamine indicated for the treatment of ADHD and narcolepsy.  www.rxlist.com

[25]Xanax is a benzodiazepine class of the central nervous system compounds and is indicated for the treatment of anxiety disorder.  www.rxlist.com

and he does not to seem to have any insight which would allow that. When asked what he needs, I do actually agree with him. In that he needs to maintain his abstinence from alcohol and or any other mood altering chemical and begin to focus on himself and what can be improved in the interim.

He can be seen back on an as needed basis from a psychiatric standpoint and continue to maintain his safety. He will undoubtedly continue to pursue his rights as an inmate and his legal questions that he hopes to answer. Again, he will kite with questions or concerns. I do not feel he is a danger to himself or others. I would be happy to expand more of my thoughts in regard to any further legal actions.

Two Bulls next met with Brostad on February 18, 2011. Two Bulls admitted he was upset because he believed the psychiatrist (Pavlis) did not help him. Two Bulls met with Gilchrist again on March 14, 2011, and again agreed to journal his feelings and possibly participate in group therapy because he believed he needed to show the parole board that he was working on his mental health issues. On March 20, 2011, Two Bulls inquired to Gilchrist about having his mental health code changed "stating his has been off medications since June 10 and he was having no MH issues or needs." Dr. Gilchrist refused the request, noting Two Bulls "is off psych medications but as of 3-14-11 he did kite MH and asked to be seen for support services and was doing daily journaling which he reported today that he will be sending over. In view of his request for MH services we will be unable to change his MH code for at lease 90 days from his last MH contact per DHS policy . . ." There is no indication that Two Bulls sought further mental health care until November 15, 2011. On that date, Two Bulls was called to the Mental Health department but he refused to report. In December, 2011, Two Bulls filed a grievance against Brostad in an attempt to obtain copies of his internal mental health records.

Two Bulls did not meet with Brostad again until March, 2012. At that meeting, Two Bulls again asked to see the psychiatrist. When Two Bulls met with Brostad again in April, Brostad informed Two Bulls he was on the schedule to see the psychiatrist in June. Dr. Christopher Davidson (psychiatrist) met with Two Bulls on June 8, 2012. Dr. Davidson noted Two Bulls's thoughts were logical and connected with a little decrease in attention and concentration. "He is a little emotionally reactive but overall he is quite pleasant and certainly he does not seem overly

negative or demanding today.  He is not suicidal, homicidal, or paranoid.  There are no signs or symptoms of psychosis."  Dr. Davidson's diagnosis was the same as was Dr. Pavlis's: mood disorder, not otherwise specified, anxiety disorder, not otherwise specified, ADHD, hyperactive impulsive type, polysubstance dependence in full remission in controlled environment, antisocial personality disorder (primary diagnosis) and asthma.  Dr. Davis, however, decided to allow Mr. Two Bulls another chance on Bupropion:

> I told him that I would be willing to give him another trial of Wellbutrin but what I would really like him to do is be really careful to use it correctly.  Avoid all opportunities to even be around people who might be misusing it, or are suspected of the same.  I would also like him to take a couple of urine drug tests for him just to confirm what he was taking and what he was not taking.  He seemed to be fairly reassured that life would get better for him if he could do this.  He says he also would like to be considered to take other medications, maybe a trial of Effexor[26] with Wellbutrin or another antidepressant.  Also talked about thyroid function, problems with B12 deficiency as issues that could be looked into.

Dr. Davidson prescribed 100 mg of Wellbutrin twice a day, with planned testing and follow up at one month and three month intervals.

### c.    Two Bulls's General Medical Care

In his Complaint, Two Bulls generally alleges that he been denied medication for treatment of allergies, asthma and proper vision.  He also alleges he suffered unexplained weight loss and that the Defendants failed to properly investigate the cause.

In support of his assertion that he has been denied his allergy medication, he explains that on the evening of the same date (June 3, 2010) his psychotropic medications were discontinued, his allergies were getting worse so he attempted to go to sick call.  He alleges, however that he was "immediately denied without even having a chance to discuss the matter with Nurse Melissa."[27]

---

[26]Effexor is an antidepressant indicated for the treatment of major depressive disorder. www.rxlist.com

[27]The nursing progress note dated June 3, 2010 indicates that Two Bulls reported to sick call but left after the nurses explained to him that they were required to forward his chart to the medical provider for medical orders.  Two Bulls then left the Health Services building and instructed the

Two Bulls does not allege, however that he suffered any serious injury or illness as a result of this incident.

In his Supplement #2 (Doc. 108) Two Bulls asserts that on January 3, 2011, while he was in the SHU, he was denied his inhaler at 11:30 a.m. Two Bulls claims his medications were not on the medication cart. Later that day he returned to his housing unit in East Hall where, at about 1:30, he had difficulties breathing and had to place a towel over his head and run hot water in his sink to self-treat his shortness of breath.[28] Two Bulls grieved this denial of his inhaler through the Administrative Remedy stage and attached Warden Weber's response to Doc. 108. Warden Weber explained that because of Two Bulls's movement between the SHU and his regular housing unit on January 3, his inhaler was not available on the medication cart when Two Bulls presented to receive it while on the SHU. The information available to prison staff indicated Two Bulls had already been transferred back to his housing unit, so his medications were on the medical cart at the SHU.

The Defendants have submitted the Affidavit of Brandi Csordascsics (Doc. 75-4). Ms. Csordascsics explains that inmates receive a physical within seven days of their arrival at the SDSP. During their initial examination, inmates are asked to disclose any chronic illnesses such as asthma. If a chronic illness is disclosed upon the initial exam, the inmate is placed in a chronic care system, which triggers a visit with the medical provider at least every six months. If chronic

---

nurses to "rip up the charge sheet" because he did not want to be charged for a sick call. The next day, Two Bulls was summoned to the Health Services building where the nurses again explained to him that the physician's assistant orders allergy medications and that they would come to him through medication pass.

[28]In Doc. 108, Two Bulls asserts the Defendants "continuously and repetitively denied Plaintiff . . .his inhaler up to six (6) times, and had to place his head in the sink with a towel over his head and run hot water up to forty five (45) minutes every time he had shortness of breath just to treat it." It is unclear whether Plaintiff claims he asked six times for his inhaler on January 3, 2011, or whether he claims there were five dates in addition to January 3, 2011 that he was denied his inhaler.

care inmates experience problems between scheduled visits, they are encouraged to request a visit to sick call to receive necessary medical services.

Two Bulls is a "chronic care" inmate who receives a medical appointment at least every six months for asthma. His last visit with a physician for his asthma condition was on November 28, 2011. Two Bulls currently takes three medications (Albuterol,[29] Qvar,[30] and Singulair[31]) for his asthma condition. Two Bulls is also prescribed Claritin[32] for his allergies. The SDSP does not have a record of Two Bulls having any vision difficulties. According to the Csordascsics Affidavit, Two Bulls "has a history" of malingering. A review of Two Bulls's medical records, produced by the Defendants upon Order of the Court, reveals:

Jess Oakley, physician's assistant saw Two Bulls for an intake exam on October 21, 2008. Two Bulls reported a past medical history of asthma and his current medications for the condition were Advair[33] and Albuterol. His weight on intake was 154 pounds. PA Oakley noted Two Bulls's asthma and directed that his medications be continued and that Two Bulls be put on "chronic care" status. In February, 2009, Two Bulls reported he was doing well and not requiring

---

[29] Albuterol is an aerosol inhalant indicated for the treatment or prevention of bronchospasm with reversible obstructive airway disease and for the prevention of exercise induced bronchospasm. www.rxlist.com

[30] Qvar is an aerosol inhalant indicated for the maintenance treatment of asthma as prophylactic therapy in patients 5 years of age or older. It is also indicated for patients who require systemic corticosteroid administration, where adding Qvar may reduce or eliminate the need for systemic corticosteroids. www.rxlist.com

[31] Singulair is an oral leukotriene receptor antagonist which is indicated for the prophylaxis and chronic treatment of asthma in adults and pediatric patients age 12 months and older. It is also indicated for the relief of symptoms of seasonal allergic rhinitis. www.rxlist.com

[32] Claritin is an antihistamine indicated for the relief of nasal and non-nasal symptoms of seasonal allergic rhinitis and for the treatment of chronic idiopathic urticaria (hives) in patients 2 years of age or older. www.rxlist.com

[33] Advair is a corticosteroid indicated for the treatment of asthma. www.rxlist.com

the use of his inhaler more often than two or three times per week.  By this time, Two Bulls had gained weight from his intake exam to 173 pounds.  Two Bulls continued to do well and needed minimal use of his inhaler as of his August, 2009 chronic care visit.

Mr. Two Bulls reported to Health Services on September 16, 2009 with a laceration to his left lip.  He indicated he'd cut himself with a razor.  On examination he also had a fractured tooth. Two Bulls explained he'd tried to pull the tooth himself because it had been bothering him.  The wounds appeared inconsistent with Two Bulls's description of events.  The physician's assistant sutured the lip wound and prescribed antibiotics and ibuprofen.  Two Bulls next visited  Health Services on October 7, 2009.  The notes for that visit indicate it was later determined  the fractured tooth and lacerated lip which were noted during the previous visit occurred as a result of an altercation.  The physician's assistant likewise noted Two Bulls had been inconsistent and/or non-compliant with his asthma medication.

When Two Bulls returned to Health Services on June 2, 2010, his primary complaint was acne and an itchy scalp.  The physician's assistant prescribed acne medication and T-Gel shampoo. He returned a few weeks later complaining of seasonal allergies  and congestion.  Mr. Two Bulls also complained about having inhaled a bug in his nose.  The physician's assistant prescribed nasal spray and artificial tears.   He reassured Two Bulls that he did not have a bug in his nose and advised him that if he continued to have thoughts that something was in his nose, he should seek assistance from the Mental Health department.

In August, 2010, the "Progress Notes" contain several nursing notes in which the nurses document Two Bulls's concern about having lost weight.  An August 23, 2010 note indicates that "BMI states male 5'11' should weight between 140-175 lbs.  Last weight 158 lbs inmate within normal limits."

Two Bulls had his chronic care visit in February 2011 at the SDSP Health Services department.  He reported using his inhaler several times per week, and he remained concerned

about weight loss even though his Strattera prescription (upon which he blamed the weight loss) had been discontinued.  His weight that day was 147 pounds.  The physician's assistant ordered labs to rule out a metabolic cause for the weight loss, and ordered monthly weight checks for three months.  A "special needs flow sheet" indicates that in September, 2010 Two Bulls weighed 150 pounds, in February 2011 he weighed 147, in May, 2011 he weighed 149 and in November, 2011 he weighed 145.  In May, 2011, Two Bulls continued to question why he was not gaining weight. He requested double portions of food.  A nursing assessment indicated no further action was necessary because Two Bulls's BMI was within normal limits.  This assessment was confirmed by the physician's assistant a few days later.

Two Bulls reported allergies and eye irritation in June, 2011.  Claritin and eye drops were ordered for him.  He visited with a nurse practitioner in November, 2011 regarding his chronic asthma needs.  He reported using his inhaler approximately twice per day.  Because of his reportedly increasing symptoms, the nurse practitioner added Singulair to Two Bulls's regular medications.  On November 18, 2011, the nurses' notes indicate they were called to Two Bulls's cell to assess him for difficulty breathing.  They found him bending over his sink with a towel over his head.  When he came to the front of his cell, he displayed no signs of shortness of breath or respiratory difficulties.  His oxygen saturation was normal at  99%.  In May, 2012, Two Bulls complained of spring allergy symptoms.  The nurse recommended an order for  artificial tears in addition to his pre-existing prescriptions for asthma and allergy medications.   Two Bulls's last recorded weight (on the May, 22, 2012 nursing assessment form) was 152 pounds.

## B.    Deliberate Indifference to Serious Medical Needs: Standards

The  Eighth  Amendment  prohibits  the  infliction  of  cruel  and  unusual  punishment.  A prisoner's allegation of inadequate medical attention was recognized as a potentially viable claim for a violation of the prohibition against cruel and unusual punishment, via a § 1983 cause of action, in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  To state a cause of action, the prisoner must sufficiently allege  "deliberate indifference" to a prisoner's "serious illness or injury." *Id.*, 429 U.S. at 105, 97 S.Ct. at 291. "This conclusion does not mean, however,

that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* An inmate must clear a "substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 448-49 (8th Cir. 2010).

With regard to the "deliberate indifference" requirement, the courts have made clear that mere negligence or medical malpractice is not enough. *Estelle*,   429 U.S. at 107, 97 S.Ct. at 293. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) he suffered objectively serious medical needs and; (2) the prison officials actually knew but deliberately disregarded those needs. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). To show deliberate indifference, the plaintiff must show prison officials "knew of, yet disregarded, an *excessive* risk to [his] health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997)(emphasis added, citations omitted). A prisoner's bare assertion or self-diagnosis alone, however, is insufficient to establish the existence of a medical condition. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994).

Also, "[c]ertainly physicians do not, and should not, necessarily accept as true the medical judgments offered by their patients. They must make treatment decisions on the basis of a multitude of factors, only one of which is the patient's input." *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990). Additionally, a prison doctor is entitled to exercise his medical judgment, and does not violate the Eighth Amendment merely by disagreeing with, or pursuing a course of treatment different than the attending physician. *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993). "Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86

F.3d 761, 765 (8th Cir. 1996); *Beck v. Skon*, 253 F.3d 330, 334 (8th Cir. 2001). A prisoner's difference of opinion over matters of expert medical judgment or a prescribed course of treatment does not rise to the level of a constitutional violation. *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981). The Eighth Circuit has also noted that a prison health care system's failure to provide treatment that is "as extensive as a private health care provider" might have offered does not rise to the level of deliberate indifference. *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997).

There is no respondeat superior liability for supervisors with regard to prisoner deliberate indifference claims. "A general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Prison officials who lack medical expertise cannot be held liable for the diagnostic decisions of medical staff. *Id.* Supervisors can, however, incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (citations omitted).

### C.    Qualified Immunity: Standards

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (citations omitted). Prison officials are not liable for bad guesses in gray areas, they are liable for crossing bright lines. *Id.* Officials lose their right to qualified immunity only if they knew or reasonably should have known their actions would violate the constitutional rights of the prisoner, or if they took the action with malicious intent to deprive the prisoner of his constitutional rights. *Id.*

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted). For years, the qualified immunity inquiry mandated a two step process: (1) determine whether the

official's conduct violated a constitutional right.  If the answer is no, there is no need for further inquiry.  If the answer is yes, (2) determine whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted.  *Id. citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Stated another way, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2001) (citations omitted, punctuation altered).

Until recently, the qualified immunity analysis was limited to the two step sequence outlined in *Saucier*.  Only if a constitutional violation was found were the courts permitted to proceed to the second inquiry.   The United States Supreme Court has recently determined, however, that district courts may use their discretion to determine which prong of the qualified immunity analysis should be addressed first "in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

**D.    No Genuine Issue of Material Fact Remains For Trial Regarding Deliberate Indifference To Two Bulls's Serious Medical Needs**

The Court must view the record in the light most favorable to Two Bulls.  If the record shows there is no genuine issue as to any material fact, the Defendants are entitled to judgment as a matter of law.  *Webb v. Lawrence County, South Dakota*, 144 F.3d 1131, 1134 (8th Cir. 1998); Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of identifying the portions of the record it believes demonstrates the absence of a genuine issue of material fact.  *Webb, id.* at 1134 (citations omitted).  Once the moving party has met this burden, however, the non-moving party must set forth specific facts showing there is a genuine issue for trial.  *Id.* at 1135.

> Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.

*Id.* Further,

26

> Disputes that are not 'genuine' or that are about facts that are not 'material,' will not preclude summary judgment. 'Material facts are those which might affect the outcome of the lawsuit.  A dispute over an issue of fact is 'genuine' if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue.'

*Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1017-18 (8th Cir. 2011) (citations omitted).  Although Two Bulls has sufficiently shown that there are some disputed facts in his case, as explained in more detail below, the facts he disputes are not material to any genuine issue which could affect the outcome of his lawsuit.  For this reason, summary judgment in favor of the Defendants is appropriate.

### 1.    Two Bulls Has Not Shown Deliberate Indifference to A Serious Medical Need

The Defendants have not contested  Two Bulls's contention that he suffers from a psychiatric condition and asthma or that those  conditions constitute a serious medical needs. *See e.g. Arnold v. Lewis*, 803 F.Supp. 246, 257 (D.Az. 1992) (parties stipulated that Plaintiff's mental illness presented a serious medical need); *Raunio v. Hahn*, 2007 WL 675737 (W.D. Wis.) at *4 (asthma may constitute a serious medical need "depending on the severity of the attacks.").  To survive summary judgment, however, Two Bulls must prove that the prison officials "knew of, yet disregarded, an *excessive* risk to [his] health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997)(emphasis added, citations omitted).   A prisoner's bare assertion or self-diagnosis alone, however, is insufficient to establish the existence of a medical condition.  *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994).

Two Bulls received physical and psychiatric intake examinations upon his arrival at the South Dakota State Penitentiary.  He has received periodic psychiatric and medical care.  His assertion of deliberate indifference to medical needs arises out of his contention that, against his wishes, his prescription for Wellbutrin (also known as Bupropion) was discontinued after he was accused of attempting to leave the health services area with the drug still in his possession.  Two Bulls denies that he attempted to leave with Wellbutrin/Bupropion still in his possession and/or that he has ever abused Wellbutrin.  This disputed fact, however, is not material to whether the

Defendants have been deliberately indifferent to Two Bulls's serious medical need. Although the alleged incident resulted in the withdrawal of Wellbutrin/Bupropion from the potential prescriptions drugs which were available to treat Two Bulls's condition, his medical and psychiatric providers continued to provide alternate care. During his first appointment with Two Bulls after the alleged May 24 incident, Mark Steil explained to Two Bulls why the Wellbutrin/Bupropion had been discontinued and would not be re-started, adjusted one medication (Celexa) and, at Two Bulls's request, discontinued one medication (Risperdal) and began a new one (Buspar). Dr. Davidson has recently (June 8, 2012) reinstated Two Bulls's preferred psychotropic prescription (Wellbutrin/Bupropion). Two Bulls contends that he should prevail on his deliberate indifference claim "for the damages that [he] went through and the suffering and personal injuries; which should waive immunity defenses on his claims for money damages, after the fact that he has been litigating this issue over two (2) years." *See* Doc. 106. "Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996); *Beck v. Skon*, 253 F.3d 330, 334 (8th Cir. 2001). A prisoner's difference of opinion over matters of expert medical judgment or a prescribed course of treatment does not rise to the level of a constitutional violation. *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981). That Two Bulls did not get the exact prescription he desired, therefore, does not amount to deliberate indifference to a serious medical need, even in light of Two Bulls's assertion that the reason for its discontinuance was flawed.

A close review of Two Bulls's medical records reveals that Steil continued to work with Two Bulls to adjust his psychotropic medications. After Two Bulls's medications were discontinued for non-compliance, (August, 2009) Steil agreed to try new medications in October, 2009 when Two Bulls indicated a desire to do so. Also in October, 2009, Steil agreed to prescribe Strattera when Two Bulls indicated he suffered from ADHD. In December, 2009, Two Bulls decided the Strattera was not beneficial and requested it be discontinued; Steil complied with the request. Two Bulls requested his previous Buspar prescription be re-started; Steil also complied

with that request.  Then, in April 2010, Two Bulls decided he had been on his medications for too long because he perceived they had become ineffective.  Steil recommended decreasing the dosage of Two Bulls's medications.  Instead, at his next medical visit Two Bulls informed Steil that he'd quit taking his medications altogether and that he had no interest in trying any prescriptions other than Wellbutrin/Bupropion.  While multiple contacts with medical personnel do not necessarily preclude a finding of deliberate indifference, "the record clearly reflects that prison officials have conscientiously attempted to meet [Two Bulls's] medical needs and have continually been rebuffed by [Two Bulls's] refusal to comply with recommended treatment." *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001).  Two Bulls's disagreement with the medical staff about his care does not establish deliberate indifference.  *Id.*  Steil remained willing to offer other options in an attempt to address Two Bulls's psychiatric issues despite Two Bulls's voluntary cessation of his psychotropic medications and his refusal to try any medications other than Wellbutrin/Bupropion. *See* Steil Affidavit, Doc. 85, and treatment note dated June 10, 2010.

   Two Bulls asserts that when Steil refused to prescribe Wellbutrin/Bupropion, he requested the state court to intervene.  Two Bulls insists that Judge Fuller indicated in open court during a hearing which was held on August 17, 2010, that the Wellbutrin/Bupropion prescription would be reinstated.  If Judge Fuller made such a statement, however, it was never reduced to a Judgment or Order.  Judge Jeff Davis later assumed responsibility for Two Bulls's case after Judge Fuller left the bench, and denied Two Bulls's request for relief. Even if Judge Fuller made statements from the bench to the effect that Two Bulls's Wellbutrin/Bupropion prescription should be reinstated, informal oral comments from the bench which conflict with the Court's formal written findings and conclusions are not binding.  *O'Neill v. AGWI Lines,* 74 F.3d 93, 95 (5th Cir. 1996).   Two Bulls also directs the Court to Judge Fuller's earlier Orders and/or Two Bulls's Individual Program Directive which generally indicate that Two Bulls is required to participate in and cooperate with mental health treatment (*See* Doc. 41-1 and 41-9). To prevail on this theory, however, Two Bulls must prove the Defendants' alleged failure to provide mental health care was itself a constitutional violation which was the cause in fact of an injury to Two Bulls.  "[F]or under § 1983, the issue is whether the government official violated the Constitution or federal law, not whether he violated

the policies of a state agency.  Conduct by a government official that violates some statutory or administrative provision is not necessarily constitutionally unreasonable." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993).  Because Two Bulls has failed to show deliberate indifference, therefore, his claims that they have failed to comply with their own regulations are irrelevant to this § 1983 lawsuit.  For all of these reasons, Two Bulls has failed to show that a genuine issue of material fact remains for trial regarding his allegation that Defendants have been deliberately indifferent to his serious psychiatric needs.

Two Bulls also asserts the Defendants were deliberately indifferent to a serious medical need regarding his asthma and allergy conditions.  Two Bulls, however, has made few specific allegations.  He alleges his request for allergy medication was ignored/delayed on the evening of June 10, 2010 and that he did not receive his inhaler on January 3, 2011 because of a mix-up about whether Two Bulls was located in the SHU or on his regular housing unit on that date, and as a result his inhaler was put on the wrong medical cart.  Two Bulls expressed displeasure with the manner in which his complaints were was handled.  "Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs."  *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993).  Two Bulls has not alleged nor shown that the temporary unavailability of his allergy medication or his inhaler caused him any injury whatsoever, and at most, he has alleged the failure to provide them as quickly as he would have liked was the result of negligence rather than deliberate indifference to his medical needs.  "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Walker v Peters*, 233 F.3d 494, 502 (7th Cir. 2000) (because plaintiff prisoner could not show injury, he could not prevail on his deliberate indifference claim).

The Affidavit of Brandi Csordascsics (Doc. 75-4) establishes that Two Bulls receives "chronic care" check ups and medication for asthma, that he regularly takes three medications (Albuterol, Singulair, and Qvar) for asthma, and that he was last seen by a physician on November 28, 2011.  The nurses' notes indicate that when Two Bulls has complained about shortness of

30

breath and/or asthma symptoms, his oxygen levels have been completely normal. The record also establishes that Two Bulls is  prescribed Claritin and eye drops  for allergies.

Finally, Two Bulls claims he sustained significant, unexplained weight loss.  His medical records reveal that although his weight has fluctuated,  his BMI (body mass index) remains within normal limits, and his last recorded weight on May 22, 2012 (152 pounds) is only two pounds less than he weighed (154 pounds) at  his intake exam on October 21, 2008.

That Two Bulls has had  minor disagreements with his medical providers,  that he  has not always received his allergy and asthma medication as quickly or efficiently as he would have liked, and that he has sustained a two pound weight loss since his arrival in the prison system  does not rise to the level of deliberate indifference to a serious medical need.  For all of these reasons, Two Bulls has failed to show that a genuine issue of material fact remains for trial regarding his allegation that Defendants have been deliberately indifferent to his serious medical needs.   The Defendants' Motion for Summary Judgment (Doc. 75) should be **GRANTED.**

> **2.** **The Named Defendants Are Not Personally Involved in Two Bulls's Medical Care, Not Proper Parties To a §1983 Lawsuit, and Did Not Have an Unconstitutional Policy, Custom or Action That Inflicted Actionable Injury Upon Two Bulls.**

Two Bulls named Wardens Weber and Dooley, the Secretary of Corrections,[34]  the Department of Human Services Correctional Mental Health Unit,  the Department of Health Correctional Health Care, and Lewis & Clark Behavioral Health Services.  For the reasons explained above, Two Bulls has failed to show that during his incarceration, the Eight Amendment prohibition against  cruel and unusual punishment has been violated  by  deliberate indifference to his serious medical needs.  Even assuming Two Bulls had made such a showing, however, none of the Defendants named in his lawsuit could be held liable for the deprivation.

---

[34]As explained above, it appears neither Reisch nor Kaemingk were ever properly served.

First, there is no evidence that   Dooley, Weber , Reisch or Kaemingk  have had any personal knowledge or involvement in Two Bulls's psychiatric or medical care. Although it is not required to do so, [35] the Court has scoured the record for indication that Wardens Dooley and Weber, or Secretaries Reisch/ Kaemingk were aware of Two Bulls's ongoing disagreement with his psychiatric and/or medical providers. Two Bulls's Doc. 36 and Doc.  40 contain copies of letters to Tim Reisch and of Administrative Remedy Requests which are signed by Warden Weber (or his designee), but none of those documents appear to be directed specifically towards Two Bulls's medical care.[36]  Because there is no respondeat superior liability for a  § 1983 cause of action and Two Bulls has provided no evidence of personal knowledge or involvement, Dooley, Weber, Reisch and/or Kaemingk could not have been liable even if Two Bulls had shown deliberate indifference to his serious medical needs. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

Next, Two Bulls named the Department of Human Services Correctional Mental Health Unit and the Department of Health Correctional Health Care as Defendants to his deliberate indifference suit.  Section 1983 claims may only be brought against "persons" who, under color of state law, subject others to the deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States.  A state and its agencies sued for monetary relief are not "persons" for purposes of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 & 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Also, unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued directly in its own

---

[35]*See Barge v. Anheuser Busch, Inc.* 87 F.3d 256, 260 (8th Cir. 1996). A district court has no obligation to "plumb the record in order to find a genuine issue of material fact."  Nor is the court "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.*

[36]Two Bulls provided a copy of an Administrative Remedy Response signed by Warden Weber (Doc. 108, attachment 1, p.3) regarding the alleged denial of Two Bulls's inhaler on January 3, 2011.  For the reasons already explained, however, that Two Bulls's inhaler was temporarily unavailable on that date because he moved from the SHU back to his regular housing unit does not rise to the level of deliberate indifference.

name regardless of the relief sought. *Kentucky v. Graham*, 473 U.S. 159, 166, 167 n.14, 105 S.Ct. 3099, 3106 n. 14, 97 L.Ed.2d 114 (1985).   The   Department of Human Services Correctional Mental Health Unit and the Department of Health Correctional Health Care as a entities, therefore, are not proper parties to this § 1983 action.

Finally, Two Bulls named the Lewis and Clark Behavioral Health Services as a Defendant. Lewis and Clark is a private corporation that contracts with the South Dakota Department of Corrections to provide mental health services at the Mike Durfee State Prison.   "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies.   The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." Private corporations acting under color of state law likewise "cannot be held liable under § 1983 on a respondeat superior theory." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993); *Wallace v. Correctional Medical Services, Inc.* (2007 WL 2695627).[37]   Even under the most liberal construction of his allegations or proof, Two Bulls has not alleged or shown that Lewis & Clark has an unconstitutional custom or policy which resulted in inadequate care. Two Bulls simply alleges that Lewis and Clark's employee (Steil) was deliberately indifferent to his serious medical need by failing to provide appropriate medication.

Because   (1) Two Bulls has not alleged nor shown that Lewis and Clark has a policy or custom which resulted in deliberate indifference to Two Bull's serious medical need; (2) Steil was not deliberately indifferent and (2) there is no respondeat superior liability on the part of  Lewis

---

[37]In *Wallace*, the Court said , "In order to support a claim for relief against CMS under § 1983, . . Plaintiff must show that CMS instituted or followed a particular policy or protocol which inflicted injury on the plaintiff.  In this particular situation, however, plaintiff appears to attempt to hold CMS liable for the actions or inactions of its employees in allegedly denying plaintiff medical care and treatment.  Plaintiff does not cite to any policy or procedure by CMS which is responsible for such conduct and does not allege any 'personal' involvement in plaintiff's treatment by CMS. Therefore, the Court finds as a matter of law that plaintiff can not establish an Eighth Amendment claim against CMS." 2007 WL 2695627 at *4.

and Clark for Steil's actions, Two Bulls has no § 1983 cause of action against Lewis and Clark.

As explained in the preceding paragraphs, none of the named Defendants may be held liable under § 1983.   That Two Bulls has failed to prove personal involvement by Dooley, Weber and Reisch/Kaemingk, that the state agencies are immune from suit, or that Two Bulls failed to allege or prove an unconstitutional policy or custom by Lewis and Clark, however, is purely academic, in light of the Court's finding that Two Bulls has failed to show deliberate indifference to his serious medical needs.

### 3.   In the Alternative, the Defendants are Entitled to Qualified Immunity

In this instance, it is technically unnecessary to discuss qualified immunity because the Court has already determined that no constitutional violation has occurred. *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).  For the benefit of the reviewing Court, however, the second prong of the qualified immunity is discussed.  Even assuming Two Bulls brought suit against the persons directly involved in his medical or psychiatric care, qualified immunity would shield them from liability.   An inmate must clear a "substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 448-49 (8th Cir. 2010).   Two Bulls failed to clear the threshold.

With regard to the "deliberate indifference" requirement, the courts have made clear that mere negligence or medical malpractice is not enough. *Estelle*,   429 U.S. at 107, 97 S.Ct. at 293. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).   Further, the law is clearly established that "[p]risoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996); *Beck v. Skon*, 253 F.3d 330, 334 (8th Cir. 2001).   Mark Steil has

offered several therapeutic substitutes for Two Bulls's preferred medication, but Two Bulls has either been noncompliant or refused them. At most, the prison officials who have treated Two Bulls have failed to implement his desired course of treatment. Further, at most Two Bulls has shown only a few instances of delayed receipt of his allergy or asthma medications, none of which have resulted in any injury to him. Two Bulls's medical and psychiatric providers could have reasonably believed their conduct to be lawful in light of clearly established law and the information that they possessed. *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2001).

## CONCLUSION, RECOMMENDATION, and ORDER

For the reasons more fully explained above, it is:

**ORDERED**:

    (1)    Plaintiff's Motion for Mental Exam (Doc. 72) is DENIED;

    (2)    Plaintiff's Motion for Evidentiary Hearing (Doc. 80) is DENIED;

    (3)    Plaintiff's Motion to Compel (Doc. 100) is DENIED;

    (4)    Plaintiff's Motion to Gather (Doc. 101) is DENIED;

    (5)    Plaintiff's Motion for Order to Show Cause (Doc. 112) is DENIED;

    (6)    Plaintiff's Motion to Deny Order to Seal (Doc. 114) is DENIED;

and it is Respectfully **RECOMMENDED** to the District Court that Defendant's Motion for Summary Judgment (Doc. 75) be **GRANTED**.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this ___29___ day of June, 2012.

BY THE COURT:

_____
John E. Simko
Magistrate Judge

36