FILED
MAR 19 2014

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LOREN REYNA, a/k/a LOREN TWO BULLS, | Civ. 11-4044 |
| Plaintiff, | |
| vs. | REPORT and RECOMMENDATION |
| DARIN YOUNG, Warden, South Dakota State Penitentiary, BOB DOOLEY, Chief Warden, Warden of Mike Durfee State Prison, Director of Prison Operations;[1] TIM REISCH/DENNY KAEMINGK, Cabinet Secretary, Secretary of Corrections, Department of Corrections; DEPARTMENT OF HUMAN SERVICES CORRECTIONAL MENTAL HEALTH CARE; DEPARTMENT OF HEALTH CORRECTIONAL HEALTH CARE; LEWIS & CLARK BEHAVIORAL HEALTH SERVICES, | (Defendant's Motion for Summary Judgment, Doc. 75, Plaintiff's Cross-Motion for Summary Judgment, Doc. 162, and Plaintiff's Motion for Default, Doc. 157). |
| Defendants. | |

---

[1] On February 28, 2013, Bob Dooley was named the Director of Prison Operations for the South Dakota Department of Corrections. On May 24, 2013, Darin Young became the Warden of the South Dakota State Penitentiary. On May 4, 2011, Denny Kaemingk became the Secretary of Corrections. They have been substituted as named Defendants in this lawsuit pursuant to Fed. R.Civ. P. 25(d).

## BACKGROUND

Plaintiff, Loren Reyna, a/k/a Loren Two Bulls, (hereinafter "Two Bulls") is an inmate in the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota. He filed a *pro se* lawsuit pursuant to 42 U.S.C. § 1983, alleging various violations of his civil rights. His claims were "screened," Two Bulls was granted *in forma pauperis* status, and the suit was served upon Defendants Weber, Department of Health Correctional Healthcare, Dooley, Department of Human Services Correctional Mental Health Care, and Lewis & Clark Behavioral Health Services.[2]

This matter has been litigated through the summary judgment stage. On June 29, 2012, the undersigned entered a Report and Recommendation (Doc. 116) which recommended the Defendants' Motion for Summary Judgment (Doc. 75) be granted. The District Court, the Honorable Roberto Lange, adopted the Report and Recommendation and granted Summary Judgment. Doc. 126 and 128. In considering the Motion for Summary Judgment, the Court relied in part upon the medical records of Two Bulls which were produced by the Defendants and which are contained in Doc. 111. Those documents were sealed upon the Defendants' request. It has since become clear, however, that the medical records were not only sealed from public view, but that the Defendants did not produce them to Two Bulls.

Two Bulls appealed and the Eighth Circuit remanded the matter to this Court for reconsideration after Two Bulls was allowed access to the medical records. Doc. 147. Two Bulls has now had a chance to review the records.[3] In addition to the documents previously filed relevant

---

[2]The summons for Tim Reisch was returned unserved. In her Order dated May 19, 2011, Judge Schreier explained that Denny Kaemingk was sworn in as the Secretary of Corrections on May 4, 2011 and should be substituted for Tim Reisch as a Defendant. As explained in the first Report and Recommendation, Two Bulls also served suit papers on various individuals who are not named Defendants.

[3]Two Bulls moved for default (Doc. 157) because he did not receive the medical records in a timely manner after the Court ordered Defendants to produce them (Doc. 153). In response, the Defendants delivered to Two Bulls a second set of medical records (Doc. 159). The Court granted Two Bulls's request for an extension of deadlines to allow sufficient time to review the records (Doc.

to the Defendants' Motion for Summary Judgment, Two Bulls has submitted: (1) a Cross-Motion for Summary Judgment (Doc. 162); his own Cross-Statement of Undisputed Material Facts (Doc. 164) and a Brief in Support of his Cross-Motion for Summary Judgment (Doc. 163). The Defendants filed an additional Reply Brief in support of their own Motion for Summary Judgment and opposing Two Bulls's Cross-Motion for Summary Judgment (Doc. 167). This Court now considers Two Bulls's Cross-Motion and reconsiders the Defendant's Motion for Summary Judgment.

## DISCUSSION

Two Bulls's post-appeal submissions have not persuaded this Court that its Report and Recommendation (Doc. 116) advising the District Court to grant the Defendants' Motion for Summary Judgment (Doc. 75) should be reversed on reconsideration. The substance of the first Report and Recommendation will be incorporated into this Opinion.

Most of the issues Two Bulls raises in his new submissions have already been briefed by the parties, decided in the Court's first Report and Recommendation, and do not merit further discussion here. The Court will address only those arguments presented by Two Bulls in his Cross-Motion, Cross-Statement of Undisputed Facts, or Brief in Support of Cross-Motion for Summary Judgment which are perceived as new or different from the issues already litigated via the Defendants' Motion for Summary Judgment. The claims which Two Bulls asserts entitle him to summary judgment in his favor and/or should prevent summary judgment in favor of the Defendants fall into three basic categories: (1) that the Defendants were deliberately indifferent to his serious medical needs because they violated prison policy by refusing to allow him to see the

---

161). Subsequently, the Court received letters from both Two Bulls and defense counsel indicating the first set of records was inadvertently mailed to the wrong inmate at the SDSP (Two Bulls's cousin). Defense counsel has represented to the Court that when the error was discovered, prison personnel located, retrieved and destroyed the first set of records. Whatever prejudice delivery of the medical records to the wrong inmate caused Two Bulls, it was not to his ability to timely respond to the Defendants' summary judgment motion. It will therefore be recommended to the District Court that Two Bulls's Motion for Default (Doc. 157) be DENIED.

3

supervising psychiatrist(s); (2) that his psychiatric treatment was constitutionally deficient because he did not receive a hearing from a three person panel pursuant to SDCL § 24-2-33 or DOC Operational Memorandum Policy No. 2.4.E.1; and (3) that Warden Dooley and Secretary of Correction Reisch's response to his prison grievance regarding the medical staff's decision to discontinue his Wellbutrin was sufficient to constitute their personal involvement and subject them to liability for deliberate indifference to his serious medical needs. These assertions are discussed in turn.

### 1. Two Bulls Has Not Shown Deliberate Indifference Through Violation of Prison Policy

Two Bulls asserts that the Defendants were deliberately indifferent because they violated "prison policy" by restricting access to the prison psychiatrists. Two Bulls has not identified the "prison policy" to which he refers. If such a policy exists, any alleged violation does not necessarily equate to a constitutional violation.

> [U]nder section 1983 the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency. Conduct by a government official that violates some state statutory or administrative provision is not necessarily constitutionally unreasonable. State legislatures and government agencies are free to hold government officials to higher standards than the Constitution requires.

*Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) (citations omitted). *See also, Rose v. City of Mulberry, Arkansas*, 533 F.3d 678, 680 (8th Cir. 2008) (violation of state statute or administrative provision is not necessarily constitutionally unreasonable).

In her Affidavit, (Doc. 55) Jennie Englund explained that "offenders who enter on psychiatric medications are seen by the psychiatric provider and then scheduled for needed follow-up appointments. In addition, offenders may contact the Master Level therapist assigned to their housing unit if they are in need of mental health or psychiatric services." *Id.* at ¶3. As described in the Court's first Report and Recommendation, during his time at Mike Durfee State Prison ("MDSP") Two Bulls received extensive attention from the physician's assistant (Mark Steil) at

Lewis and Clark Behavioral Health Services.[4] Steil submitted an Affidavit (Doc. 85) in which he explained that he, in consultation with his two supervising psychiatrists, offered alternative medications to Two Bulls which constituted proper and appropriate treatment after treatment with Wellbutrin/Bupropion was discontinued. That Two Bulls was not seen directly by the supervising psychiatrists before each medication adjustment does not constitute deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1242 (8th Cir. 1997) (plaintiff's complaint that prison doctor changed medication without direct contact or review by psychiatrist insufficient to create a question of fact as to deliberate indifference).

The records attached to Two Bulls's Cross-Statement of Undisputed Facts indicate that therapist Tom Gilchrist saw Two Bulls in June 2010 at MDSP in Springfield, South Dakota, at the request of Two Bulls's unit manager. *See* Doc. 164, EX 4. When, in December 2010, Two Bulls told Greg Brostad at SDSP in Sioux Falls, South Dakota, that he wished to meet with the prison psychiatrist, Brostad made the referral for Two Bulls. *See* Doc. 111, p. 16-18, 21-25. , Brostad complied with Two Bulls's request again when Two Bulls again asked to meet with the psychiatrist in March, 2012. *Id.* p.1-2, 5-6. Two Bulls has not identified any evidence supporting his claim that his access to prison psychiatrists was restricted or denied by the Defendants or that the Defendants were otherwise deliberately indifferent to his serious medical needs.

2.   **SDCL § 24-2-33 and DOC Operational Memorandum 2.4.E.1 Are Inapplicable.**

Liberally construing Two Bulls's claims, he asserts his psychiatric care was constitutionally deficient because he did not receive a three person panel hearing pursuant to SDCL § 24-2-33 and DOC Operational Memorandum 2.4.E.1. Two Bulls claims the purpose of the statue and the policy are to determine the need for psychotropic medication and "to determine whether the condition was severe or not." SDCL § 24-2-33 states:

---

[4]As also described in the Court's first Report and Recommendation, Two Bulls received adequate attention to his other health care concerns, including his asthma and allergy complaints.

> **Hearing required prior to treatment with psychotropic medication**
> Prior to involuntary treatment with psychotropic medication, the inmate shall receive a hearing before a panel consisting of a psychiatrist, a physician, and a representative of the warden, none of whom may have participated in the inmate's current diagnosis, evaluation or treatment. The inmate has the right to notice of the hearing, the right to attend the hearing, and the right to present evidence and cross-examine witnesses, and the right to representation by a disinterested lay advisor knowledgeable about psychological issues. The panel may order involuntary treatment with psychotropic medication by majority vote if the psychiatrist is in the majority. The inmate may appeal the decision of the secretary to circuit court pursuant to Chapter 1-26.

The DOC Operational Memorandum 2.4.E.1 (EX 3 attached to Two Bulls's Cross-Statement of Undisputed Facts, Doc. 164) incorporates the language of the statute as well as other related statutes defining terms such as "severe mental illness" and how to determine if the inmate poses a danger to himself or others.

In his Brief (Doc. 163) Two Bulls asserts the "Defendants denied giving Two Bulls a hearing before a panel pursuant to the statute . . .the panel is also pursuant to South Dakota Operational Manual Memorandum Policy 2.4.E.1 *See* §§ 24-2-32 through 24-2-36 . . . Second, if the screening process does not go through to the doctor is 'denial of access to the doctor in these cases where there is a clear need to a physician, is a clear violation of the constitution.'" Two Bulls cites *Johnson v. Bowers*, 884 F.2d 1053 (8th Cir. 1989). *Johnson*, however, is a case about a whether a prison doctor was deliberately indifferent for failing to have scheduled an admittedly medically necessary surgery for an inmate some nine years after the injury occurred.

Neither Operational Memorandum 2.4.E.1 nor SDCL § 24-2-33 are applicable to Two Bulls. There is no evidence in the record that he was ever involuntarily treated with psychotropic medication. To the contrary, the record is replete with evidence that when Two Bulls expressed his desire to discontinue psychotropic medication, he was allowed to do so and when he expressed desire to restart, he was likewise allowed to do so.[5] At most, Two Bulls has shown he did not

---

[5] For example, on February 5, 2009, Two Bulls asked Mark Steil to discontinue Trazodone. Steil complied. *See* Doc. 111 at p. 92. In March, 2009, Two Bulls asked to be started on Wellbutrin

6

always receive the medication of his choice. That he was not allowed to dictate the medication of his choice does not constitute involuntary treatment which requires convening a three person panel pursuant to the Operational Memorandum or § 24-2-33. As explained his the Court's initial Report and Recommendation, Two Bulls's disagreement with his medical providers about which medication he should receive does not constitute deliberate indifference to his medical needs. "Certainly physicians do not, and should not, necessarily accept as true the medical judgments offered by their patients. They must make treatment decisions on the basis of a multitude of factors, only one of which is the patient's input." *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990). Additionally, a prison doctor is entitled to exercise his medical judgment, and does not violate the Eighth Amendment merely by disagreeing with, or pursuing a course of treatment different than the attending physician. *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993). "Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996); *Beck v. Skon*, 253 F.3d 330, 334 (8th Cir. 2001). A prisoner's difference of opinion over matters of expert medical judgment or a prescribed course of treatment does not rise to the level of a constitutional violation. *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981).

---

(Bupropion). Steil complied. *Id.* at p. 88-89. The Bupropion was continued until the May, 2009 incident in which Two Bulls was suspected of trying to leave the med pass area with the medication still in his possession. *Id.* at 83. In June, 2009, Two Bulls received Buspar when he expressed interest in trying that medication. Risperdal was discontinued at his request. *Id.* at 81-82. After medications were discontinued altogether for non-compliance, they were restarted at Two Bulls's request in October, 2009. *Id.* at p. 72-73. In December, 2009, Steil again adjusted Two Bulls's medications (decreased Strattera and restarted Buspar) at Two Bulls's request. *Id.* at 69-70. In January, 2010, Two Bulls refused to continue taking his Remeron prescription. *Id.* at 64-65, 67. In June, 2010, Two Bulls informed Steil that he chose to stop taking all medications because he thought they were interfering with his alertness. Steil offered to try to adjust the dosages or try different medications but Two Bulls refused. *Id.* at 52-53. By November, 2010, Two Bulls continued to indicate he did not wish to be on any medications. *Id.* at 31. In January, 2011, prison psychiatrist (Dr. Pavlis) agreed Two Bulls did not need psychotropic medication. *Id.* at 16-18. When Two Bulls met with another prison psychiatrist (Dr. Davidson) in June, 2012, Dr. Davidson agreed to allow Two Bulls another trial of Bupropion. *Id.* at 1-2.

### 3. Neither Warden Dooley Nor Secretary Reisch/Kaemingk Were Deliberately Indifferent to Two Bulls's Serious Medical Needs.

Next, Two Bulls asserts that by responding to his prison grievances, Warden Bob Dooley and Secretary of Corrections Tim Reisch[6] were personally involved in his psychiatric care and therefore deliberately indifferent to his serious medical needs. In support of this argument, Two Bulls attached to his Cross-Statement of Undisputed Facts (Doc. 164) as EX 9 and EX 10 copies of Warden Dooley and Secretary Reisch's responses to his complaint about being denied Wellbutrin (Bupropion) after the May, 2009 incident. Both indicated they conferred with Two Bulls's medical providers and relied on the medical providers' professional advice that Two Bulls was receiving appropriate psychiatric care.

"Deliberate indifference may be exhibited by prison medical personnel in responding to prisoner's needs or by prison officials in intentionally denying or delaying access to care or interfering with prescribed treatment." *DuBois v. Dooley*, 277 Fed. Appx. 651 (8th Cir. 2008). In *Dubois,* as here, the prisoner failed to show deliberate indifference by the medical provider because he failed to show any inappropriate medical treatment or "any injury from a change in medication against his wishes." *Id.*

Pertinent to Two Bulls's claims against Dooley and Reisch, the *DuBois* Court held summary judgment in favor of the warden was proper because "Warden Robert Dooley undisputedly lacked medical training and his only involvement was to respond to DuBois's administrative remedy request. . ..prison officials cannot substitute their judgment for medical professional's prescribed treatment." *Id.* (citations omitted). *See also, Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision . . .[the administrator] is entitled to qualified immunity."

---

[6]The discussion as to Tim Reisch and his successor (Kaemingk) is moot because the record reveals a summons was never successfully served upon either of them.

8

Because there is no respondeat superior liability for a § 1983 cause of action and Two Bulls has provided insufficient evidence of personal knowledge or involvement, Dooley, Weber, Reisch and/or Kaemingk could not have been liable even if Two Bulls had shown deliberate indifference to his serious medical needs. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

## CONCLUSION and RECOMMENDATION

This Court is mindful that whether a prison's medical staff has deliberately disregarded the medical needs of an inmate is a factually intensive inquiry. *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). The plaintiff/inmate, however, "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). Once the moving party has made and supported a motion for summary judgment, the non-moving party "must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2012) (citation omitted). To survive a motion for summary judgment, the non-moving party must "substantiate his allegation(s) with enough probative evidence to support a finding in his favor." *Jenkins v. Hennepin County*, 557 F.3d 628, 631 (8th Cir. 2009) (citation omitted). Two Bulls has failed to present sufficient evidence, either in resisting the Defendants' Motion for Summary Judgment or in supporting his own Cross-Motion for Summary Judgment, to show the Defendants were deliberately indifferent to his serious medical needs. For these reasons, along with the reasons explained in the undersigned's first Report and Recommendation, (Doc. 116) incorporated herein by this reference, it is respectfully **RECOMMENDED** to the District Court:

(1) Defendants' Motion for Summary Judgment (Doc. 75) be GRANTED;

(2) Plaintiff's Cross-Motion for Summary Judgment (Doc. 162) be DENIED;

(3) Plaintiff's Motion for Default Judgment (Doc. 157) be DENIED; and

(4) Plaintiff's Complaint (Doc. 1) be DISMISSED, with prejudice and on the merits.

9

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this ___19___ day of March, 2014.

BY THE COURT:

_____
John E. Simko
Magistrate Judge